**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| JANATH PRIDE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 12 C 5740 |
| | ) | Hon. Marvin E. Aspen |
| | ) | |
| ILLINOIS DEPARTMENT OF HUMAN SERVICES, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

MARVIN E. ASPEN, District Court Judge:

Presently before us is a motion filed by Defendant Illinois Department of Human Services ("IDHS") seeking summary judgment as to all claims brought by Plaintiff Janath Pride. Pride's claims are as follows:[1] (1) that IDHS discriminated against her based on her age in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621–34; (2) that IDHS discriminated against her based on her gender in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000(e), *et. seq.* ("Title VII"); and (3) that IDHS unlawfully retaliated against her in violation of Title VII. For the reasons set forth below, we grant IDHS's Motion for Summary Judgment in its entirety.

[1] On January 10, 2013, we granted in part Defendant's motion to dismiss portions of Plaintiff's Complaint and to Strike Plaintiff's Prayers for Certain Damages, leaving Plaintiff with three surviving legal claims. *Pride v. Illinois Dep't of Human Servs.*, 12 C 5740, 2013 WL 139881 (N.D. Ill. Jan. 10, 2013).

## BACKGROUND

Pride began working at IDHS in 1973. (Pl.'s 56.1 RSOF ¶ 7.) Since she began working for IDHS, Pride served as an assistant administrator of various public aid offices until she retired on December 31, 2011. (*Id.* ¶¶ 7, 9.) Pride had numerous supervisors during the course of her employment with IDHS, but all of Pride's present claims are based exclusively on the alleged conduct of William States during the one-year period from January 1, 2011 until December 31, 2011, when States was Pride's supervisor. (*Id.* ¶¶ 9, 16, 26.)

Prior to the time period when States acted as Pride's supervisor, Pride states that she had good relationships with her coworkers. (*Id.* ¶ 55.) During this same time period, Pride received discipline in the form of a written reprimand, coach and counseling, and verbal warnings. (*Id.* ¶ 14.) After States became Pride's supervisor, Pride felt "isolated" because States instructed Pride's subordinates to report directly to him, instead of Pride. (*Id.* ¶ 55.) Pride felt that this interference diminished her relationships with her coworkers. (*Id.*) Pride claims, although IDHS denies, that States changed Pride's job duties by discouraging employees from meeting with Pride for training, and by preventing Pride from speaking to employees about their work product or managing the office. (*Id.* ¶ 72.) According to Pride, she was humiliated after States called her a liar on one occasion in front of her coworkers. (*Id.* ¶ 59.)

On April 26, 2011, States issued a written reprimand to Pride for engaging in conduct unbecoming a state employee. (*Id.* ¶ 14(a).) On April 27, 2011, Pride filed an internal discrimination complaint against States. (Mem., Ex. D, Attach. 19, Pride's 4/27/2011 internal complaint against States.) On June 22, 2011, States issued a three-day suspension to Pride for failing to follow supervisory instructions. (Pl.'s 56.1 RSOF ¶ 14(b).) On September 26, 2011, IDHS issued Pride a ten-day suspension for engaging in conduct unbecoming a state employee.

(*Id.* ¶ 14(d).) On October 7, 2011, Pride filed a complaint with the Equal Employment Opportunity Commission ("EEOC"), alleging that she had been discriminated against based on age and sex and that she had suffered retaliation. (Mem, Ex. B, Pride's EEOC charge.) In her EEOC charge, Pride indicated that the discrimination and retaliation was continuing. (*Id.*) On October 28, 2011, IDHS suspended Pride ten additional days for engaging in conduct unbecoming a state employee. (Pl.'s 56.1 RSOF ¶ 14(c).)

Pride retired on December 31, 2011. (*Id.* ¶ 9.) Pride claims that she was forced to retire because she could no longer tolerate the stressful conditions brought about by her isolation, her alienation, and the change in her job duties and because, overall, she could no longer do her job. (*Id.* ¶ 73.) Pride claims that she would have worked for three additional years if not for States' conduct. (*Id.* ¶ 64.)

**STANDARD OF REVIEW**

Summary judgment is proper only when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue for trial exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986). This standard places the initial burden on the moving party to identify those portions of the record that "it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S. Ct. 2548, 2553 (1986) (internal quotations omitted). Once the moving party meets this burden of production, the nonmoving party "must go beyond the pleadings" and identify portions of the record demonstrating that a material fact is genuinely disputed. *Id.;* Fed. R. Civ. P. 56(c). In deciding whether summary

judgment is appropriate, we must accept the nonmoving party's evidence as true, and draw all reasonable inferences in that party's favor. *Anderson*, 477 U.S. at 255, 106 S. Ct. at 2513.

## ARGUMENT

### A. Pride Is Not Barred from Pursuing A Constructive Discharge Claim.

As a preliminary matter, IDHS argues that Pride is barred from pursuing her constructive discharge claim because it is beyond the scope of her EEOC complaint. (Mem. at 6.) Defendants are correct that, generally speaking, claims not included in a plaintiff's underlying EEOC charge of discrimination are subject to dismissal if later raised in a federal lawsuit. *Graham v. AT&T Mobility, LLC*, 247 F. App'x 26, 28–29 (7th Cir. 2007); *Cheek v. W. & S. Life Ins. Co.*, 31 F.3d 497, 500 (7th Cir. 1994); *see Collins v. Fox Home Ctr., Inc.*, 12 C 9555, 2014 WL 441427, at *4 (N.D. Ill. Feb. 4, 2014); *Peterson v. Bay Valley Foods, LLC*, 11 C 50309, 2012 WL 195036, at *2 (N.D. Ill. Jan. 23, 2012). "This rule serves two purposes: affording the EEOC the opportunity to settle the dispute between the employee and employer, and putting the employer on notice of the charges against it." *Sitar v. Indiana Dep't of Trans.*, 344 F.3d 720, 726 (7th Cir. 2003); *Cheek*, 31 F.3d at 500; *Ammons-Lewis v. Metro. Water Reclamation Dist. of Greater Chi.*, 11 C 6920, 2012 WL 1802148, at *3 (N.D. Ill. May 17, 2012).

Courts recognize an exception to this rule for "claims that are 'like or reasonably related' to the EEOC charge, and can be reasonably expected to grow out of an EEOC investigation of the charges." *Sitar*, 344 F.3d at 726 (quoting *Jenkins v. Blue Cross Mut. Hosp. Ins., Inc.*, 538 F.2d 164, 168 (7th Cir. 1976)); *Cheek*, 31 F.3d at 500. To qualify as "'like or reasonably related,' the claims must, at minimum, describe the same conduct and implicate the same individuals." *Swearnigen-El v. Cook Cty. Sheriff's Dep't*, 602 F.3d 852, 864 (7th Cir. 2010) (quoting *Cheek*, 31 F.3d at 500); *Graham*, 247 F. App'x at 29; *Peterson*, 2012 WL 195036, at

*2; *see Ammons-Lewis*, 2012 WL 1802148, at *3 (noting that claims are reasonably related if they share a factual relationship). We hold that that Pride's constructive discharge claim is reasonably related to her EEOC charge.

Pride filed her EEOC charge on October 7, 2011. (Mem., Ex. B.) Pride retired on December 31, 2011. (Pl.'s 56.1 RSOF ¶ 9.) Since Pride's alleged constructive discharge post-dates her EEOC charge, she did not include a constructive discharge claim in the EEOC charge. In Pride's EEOC charge, she alleged that she was treated differently than younger, male employees, was disciplined subsequent to registering a complaint, and that the treatment was continuing as of the filing date. (Mem., Ex. B.) While Pride's EEOC charge does not allege constructive discharge or state the specific conduct or individuals that she includes in her federal complaint, we do not find this dispositive. "[T]he requirement that a plaintiff have filed EEOC charges before suit is not intended to erect an elaborate *pleading* requirement or to allow form to prevail over substance." *Jarrells v. Select Pub., Inc.*, 35 F. App'x 265, 266 (7th Cir. 2002) (citing *Cable v. Ivy Tech State Coll.*, 200 F.3d 467, 477 (7th Cir. 1999) (emphasis in original)). "The Supreme Court has also observed more generally that procedural technicalities should not be used to bar a Title VII claim." *Jarrells*, 35 F. App'x at 266 (citing *Zipes v. Trans World Airlines*, 455 U.S. 385, 397–98, 102 S. Ct. 1127, 1134–35 (1982)). Pride's EEOC charge, while vague, alleges the same conduct as her federal complaint. Requiring her to file a new EEOC charge to include a constructive discharge claim that post-dates her initial EEOC charge would amount to a procedural technicality that is unwarranted. As such, we hold that Pride's constructive discharge claim may proceed. *See also McKenzie v. Illinois Dept. of Transp.*, 92 F.3d 473, 481 (7th Cir. 1996); *Wright v. Methodist Youth Servs., Inc.*, 97 C 4459, 1998 WL 196452, at *3 (N.D. Ill. Apr. 20, 1998) ("The alleged retaliation and constructive discharge post-

date Plaintiff's EEOC filings. In this situation, the remedial purposes of Title VII are best served by avoiding procedural technicalities and allowing Plaintiff's retaliation and constructive discharge claims to proceed.").

**B. Pride's Age and Gender Discrimination Claims Do Not Withstand Summary Judgment.**

Pride claims that she was discriminated against because of her age in violation of the ADEA and because of her gender in violation of Title VII. (Resp. at 6.) Both claims can be proven using either the direct method or the indirect method. *See, e.g.*, *Olson v. Northern FS, Inc.*, 387 F.3d 632, 635 (7th Cir. 2004) (holding that "[a] plaintiff can prove discrimination under the ADEA by . . . the direct method . . . or . . . the indirect method"); *Kampmier v. Emeritus Corp.*, 472 F.3d 930, 939 (7th Cir. 2007) (holding that a plaintiff can prove gender discrimination using the direct or indirect method). Pride does not seek to prove her claims using the direct method. (Resp. at 6.) To prevail on a claim of age or gender discrimination under the indirect method, Pride must prove four elements: 1) she is a member of a protected class; 2) she was meeting her employer's legitimate expectations; 3) she suffered an adverse employment action; and 4) similarly situated employees outside of the class were treated more favorably. *Kampmier*, 472 F.3d at 939; *Balance v. City of Springfield*, 424 F.3d 614, 617 (7th Cir. 2005); *Olson*, 387 F.3d at 635; *Koski v. Standex Int'l Corp.*, 307 F.3d 672, 676 (7th Cir. 2002). While accepting Pride's evidence as true and drawing all reasonable inferences in her favor, we hold that a reasonable jury could not find that Pride has suffered an adverse employment action or that she was constructively discharged. We first analyze whether a reasonable jury could find that any of the conduct described by Pride constitutes adverse employment action on its own. We then consider whether a reasonable jury could find that IDHS's conduct taken in sum could give rise to a constructive discharge.

**1. Pride Fails to Show Adverse Employment Action.**

Although courts have held that the definition of adverse employment action is "generous," it "is still subject to certain limitations." *Johnson v. Cambridge Indus., Inc.*, 325 F.3d 892, 901 (7th Cir. 2003). "At the very least," a plaintiff must show "some quantitative or qualitative change in the terms or conditions of his employment that is more than a mere subjective preference." *Id.* For purposes of the ADEA and Title VII, "an adverse employment action is a significant change in the claimant's employment status such as hiring, discharge, denial of promotion, reassignment to a position with significantly different job responsibilities, or an action that causes a substantial change in benefits." *Rhodes v. Illinois Dep't of Transp.*, 359 F.3d 498, 504 (7th Cir. 2004); *Griffin v. Potter*, 356 F.3d 824, 829 (7th Cir. 2004) (stating that the standard for adverse employment action under Title VII and the ADEA are the same); *Hilt-Dyson v. City of Chi.*, 282 F.3d 456, 465 (7th Cir. 2002); *Stutler v. Illinois Dep't of Corr.*, 263 F.3d 698, 703 (7th Cir. 2001).

Determining whether an employer's conduct constitutes adverse employment action is a fact-specific inquiry. *Traylor v. Brown*, 295 F.3d 783, 788 (7th Cir. 2002). Pride argues that she suffered five specific adverse employment actions: 1) within a few months of States' arrival, "individuals which plaintiff had had a good working relationship with no longer spoke to her;" 2) States would question employees who went to Pride for assistance; 3) States instructed Pride's subordinates to not pay attention to her; 4) States discouraged Pride from training new employees ; and 5) on one occasion, States called Pride a liar in front of many coworkers. (Resp. at 8.)

Employer conduct without tangible adverse job consequences is not an actionable adverse employment action under Title VII or the ADEA. *Sweeney v. West*, 149 F.3d 550, 556

(7th Cir. 1998); *Griffin*, 356 F.3d at 829–30. Putting aside Pride's constructive discharge claim for the moment, Pride does not produce any evidence that she was denied a promotion, that her compensation was diminished, or that her career prospects were affected in any way. As such, Pride has not demonstrated how any of these five actions resulted in an adverse "tangible job consequence." *Sweeney*, 149 F.3d at 556; *Griffin*, 356 F.3d at 829–30.

Pride's first three examples of allegedly adverse employment actions—that States negatively affected Pride's relationship with coworkers, questioned employees who sought assistance from Pride, and instructed Pride's subordinates not to pay attention to her—fail because they do not "significantly alters the terms and conditions of the employee's job." *Duncan v. Thorek Mem'l Hosp.*, 784 F. Supp. 2d 910, 919 (N.D. Ill. 2011) (citing *O'Neal v. City of Chi.*, 392 F.3d 909, 911 (7th Cir. 2004)). "An adverse employment action is one where the conditions in which an employee works are changed in a way that subjects her to a humiliating, degrading, unsafe, unhealthful, or an otherwise significantly negative alteration in her workplace environment." *Id.* "Not everything that makes an employee unhappy is an adverse employment action; an adverse action is one that significantly alters the terms and conditions of the employee's job." *Id.* (citing *Stutler*, 263 F.3d at 703). Accepting these allegations as true, Pride presents no evidence showing how these actions altered her workplace environment. *Id.*; *see also Sawyer v. Nicholson*, 06 C 5907, 2010 WL 4510954, at *24 (N.D. Ill. Nov. 1, 2010) ("However unpleasant [plaintiff's] work environment may have been, the actions that she complains of—including . . . the removal of certain duties and equipment, gossip, temporary transfers, and communication problems and difficulties with her supervisors—are not the kind of tangible job consequences that the Seventh Circuit has required employees to demonstrate in their retaliation actions."), *amended on reconsideration in part sub nom. Sawyer v. Shinseki*, 06

C 5907, 2011 WL 748825 (N.D. Ill. Feb. 24, 2011). While Pride may not have been happy about these three actions, the record before us does not show that these actions significantly changed the terms and conditions of Pride's job.

Pride's fourth example of allegedly adverse employment action—that States discouraged Pride from training new employees—fails because we find it to be a permissible alteration of job responsibilities. "[M]ere inconvenience or an alteration of job responsibilities" is insufficient to show adverse employment action, but "reassignment to a position with significantly different job responsibilities" can constitute adverse employment action. *Rhodes*, 359 F.3d at 504 (quoting *Crady v. Liberty Nat'l Bank & Trust Co.*, 993 F.2d 132, 136 (7th Cir. 1993)). Assuming that States discouraged Pride from coordinating training for new individuals, we find this to be an "alteration of job responsibilities" rather than a "reassignment to a position with significantly different job responsibilities" as is consistent with actionable adverse action. *Id.* Pride has not presented any evidence that being prevented from training new employees caused her any adverse "tangible job consequence." *Sweeney*, 149 F.3d at 556; *see also Smith v. Sibelius*, 09 C 7280, 2011 WL 3704146, at *6 (N.D. Ill. Aug. 17, 2011) (holding that "the transfer of one of plaintiff's job responsibilities . . . [did] not constitute an actionable adverse action" because plaintiff "offered no evidence that having this particular work responsibility removed caused her any adverse effect—for example, a loss of advancement opportunities or reduced pay."), *aff'd sub nom. Smith v. Sebelius*, 484 F. App'x 38 (7th Cir. 2012). We therefore find that discouraging Pride from training new employees is not an adverse employment action.

Pride's fifth example of allegedly adverse employment action—that on one occasion, States called Pride a liar in front of many coworkers—fails because one unpleasant or inappropriate comment is insufficient to constitute adverse employment action. While certain

behavior and conduct may be inappropriate or unpleasant, it does not necessarily establish adverse employment action. *Stutler*, 263 F.3d at 704. We find that a single instance where States called Pride a liar in front of other employees does not rise to an actionable adverse employment action. *See, e.g.*, *Griffin,* 356 F.3d at 829–30 ("[Plaintiff] submitted evidence that at staff meetings over a two-month period [her supervisor] commented that she was a 'bad influence on the office' and that she thought she knew everything. Although the supervisor's comments may have created an 'unpleasant' environment, these comments were not . . . actionable."); *Speer v. Rand McNally & Co.*, 123 F.3d 658, 664 (7th Cir. 1997) (holding that actions of a supervisor who yelled at plaintiff employee and "did not make her feel as if she was part of the work group" were not adverse employment actions); *Dahl v. IHOP Mgmt. Hospitality of Racine, Inc.*, 07 C 280, 2008 WL 5130079, at *6 (E.D. Wis. Dec. 5, 2008) (holding that one instance of a supervisor calling plaintiff employee a "f-ing compulsive liar," along with other inappropriate behavior, was not actionable). Accordingly, while it may have been unprofessional or unpleasant for States to call Pride a liar in front of other employees, it is legally insufficient to establish adverse employment action.

In summary, no reasonable jury could find that any of the five actions Pride cited rise to the level of actionable adverse employment action.

**2. Pride Fails to Show Constructive Discharge.**

Pride additionally argues that the sum of the five actions described above forced her to retire and amounted to a constructive discharge. (Resp. at 8.) Constructive discharge, if established, is an actionable adverse employment action. "[T]o demonstrate constructive discharge, the plaintiff must show that she was forced to resign because her working conditions, from the standpoint of the reasonable employee, had become unbearable." *E.E.O.C. v. Univ. of*

*Chi. Hosps.*, 276 F.3d 326, 331 (7th Cir. 2002). "[A] plaintiff's resignation is not truly voluntary if quitting was the only way she could extricate herself from the intolerable conditions. But unless conditions are beyond 'ordinary' discrimination, a complaining employee is expected to remain on the job while seeking redress." *Perry v. Harris Chernin, Inc.*, 126 F.3d 1010, 1015 (7th Cir. 1997) (citing *Rabinovitz v. Pena,* 89 F.3d 482, 489 (7th Cir. 1996)). The plaintiff must "demonstrate a discriminatory work environment 'even more egregious than the high standard for hostile work environment.'" *Univ. of Chi. Hosps.*, 276 F.3d at 331–32 (quoting *Tutman v. WBBM-TV, Inc.*, 209 F.3d 1044, 1050 (7th Cir. 2000)).

Consistent with these authorities, the five actions Pride identified are insufficient for a reasonable jury to find that she was constructively discharged. None of these allegations describe abusive comments, threats of harm, disturbing physical contact, or signs of imminent termination during this time period. *Roby v. CWI, Inc.*, 579 F.3d 779, 785 (7th Cir. 2009); *Diab v. Chicago Bd. of Educ.,* 850 F. Supp. 2d 899, 924 (N.D. Ill. 2012); *Trimble v. Alliance–DeKalb/Rock–Tenn Co.,* 801 F. Supp. 2d 764, 778 (N.D. Ill. 2011). Conduct justifying constructive discharge must be "egregious." *Univ. of Chi. Hosps.*, 276 F.3d at 331–32; *see also Tutman*, 209 F.3d at 1050 (finding that a "credible death threat that signals grave danger to the plaintiff's bodily integrity . . . can constitute grounds for finding constructive discharge"); *Taylor v. Western. & S. Life Ins. Co.*, 966 F.2d 1188, 1191, 1198–99 (7th Cir. 1992) (finding constructive discharge where harassment included a supervisor holding a pistol to the plaintiff's head); *Brooms v. Regal Tube Co.,* 881 F.2d 412, 417, 423 (7th Cir. 1989) (finding constructive discharge where significant harassment culminated with a co-worker grabbing the plaintiff and threatening to kill her). Taking all of Pride's allegations as true, and drawing all inferences in

her favor, we find that Pride has not presented sufficient evidence to show that her work environment was unbearable and resulted in a constructive discharge.

Because Pride has failed to present evidence such that a reasonable jury could find that she suffered an adverse employment action, we grant IDHS's motion for summary judgment as to Pride's age and gender discrimination claims.[2]

**A. Pride's Retaliation Claim Also Lacks Merit.**

Title VII and the ADEA prohibit an employer from retaliating against an employee who has engaged in a statutorily protected activity. *See* 42 U.S.C. § 2000e–3(a); 29 U.S.C. § 623(d); *Small v. WW Lodging, Inc.*, 106 F. App'x 505, 508 (7th Cir. 2004). A plaintiff may prove retaliation using either the direct or the indirect method. *Argyropoulos v. City of Alton,* 539 F.3d 724, 733 (7th Cir. 2008); *Metzger v. Ill. State Police,* 519 F.3d 677, 681 (7th Cir. 2008). The elements for the direct and indirect method under the ADEA and Title VII are the same. *Smith v. Lafayette Bank & Trust Co.*, 674 F.3d 655, 657–58 (7th Cir. 2012) (describing the elements necessary to prove retaliation under the ADEA); *Argyropoulos,* 539 F.3d at 733 (describing the elements necessary to prove retaliation under Title VII). Pride alleges retaliation through the direct method only, so we need not consider the indirect method here. (Resp. at 11.) Under the direct method, a plaintiff "must present evidence, direct or circumstantial, showing that: (1) she engaged in statutorily protected activity; (2) she suffered a materially adverse action; and (3) a causal connection exists between the two." *Argyropoulos*, 539 F.3d at 733; *Culver v. Gorman & Co.*, 416 F.3d 540, 545 (7th Cir. 2005). There is no dispute that Pride engaged in protected activity by filing an internal complaint against States in April of 2011 or that she suffered a

[2] Because we find that no reasonable jury could find that Pride suffered an adverse employment action, we need not rule on the other elements necessary to prove age and gender discrimination.

materially adverse action with respect to the July, September, and October suspensions. The only issue before us is whether Pride has demonstrated a causal connection between them.

"[S]uspicious timing alone is almost always insufficient to survive summary judgment." *Leitgen v. Franciscan Skemp Healthcare, Inc.*, 630 F.3d 668, 675 (7th Cir. 2011); *Burks v. Wisconsin Dep't Transp.*, 464 F.3d 744, 758–59 (7th Cir. 2006); *Oest v. Illinois Dep't Corrs.*, 240 F.3d 605, 616 (7th Cir. 2001). Unless the "adverse impact comes 'on the heels' of the protected activity," additional evidence beyond suspicious timing is typically necessary for a factfinder to infer retaliatory motive. *Casna v. City of Loves Park*, 574 F.3d 420, 427 (7th Cir. 2009) (leaving the question of intent to the jury where defendant recommended plaintiff's termination the day after she complained about disability discrimination); *Loudermilk v. Best Pallet Co.*, 636 F.3d 312, 315 (7th Cir. 2011) (leaving the question of intent to the jury where defendant fired plaintiff on the spot as he presented a note describing alleged discriminatory treatment, and within about three weeks of his first complaint of discrimination); *see Coleman v. Donahoe*, 667 F.3d 835, 860–61 (7th Cir. 2012). Furthermore, the United States Supreme Court recently heightened the requirements for causation in the Title VII retaliation context:

> Title VII retaliation claims must be proved according to traditional principles of but-for causation, not the lessened causation test stated in [42 U.S.C.] § 2000e–2(m). This requires proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer.

*Univ. of Texas Sw. Med. Ctr. v. Nassar*, — U.S. —, —, 133 S. Ct. 2517, 2533 (2013). Here, Pride has failed to present evidence such that a reasonable jury could find that she would not have suffered disciplinary actions but for her internal complaint against States.

Pride identifies four disciplinary actions—one written reprimand and three suspensions—as evidence of retaliation for engaging in protected activity. (Resp. at 11.) Pride

attempts to establish causation based on the temporal proximity between her complaint and these four disciplinary acts. (Resp. at 11–12.) The record of the timing of Pride's initial internal complaint against States and the written reprimand issued to Pride is unclear. The internal complaint is dated April 27, 2011. (Pl.'s 56.1 RSOF ¶ 14(a).) The written reprimand is dated April 26, 2011. (Mem., Ex. D, Attach. 19.) Pride argues that States was aware of the internal complaint and that States issued the written reprimand in retaliation for Pride's complaint. (Resp. at 11–12.) Defendants note that a pre-disciplinary hearing for Pride was set on April 20, 2011 and that States was unaware of the internal complaint against him until after he issued the written reprimand. (Reply at 6.) However, we need not resolve this dispute because a written reprimand with no tangible job consequences is not an adverse action. *Whittaker v. N. Illinois Univ.*, 424 F.3d 640, 647–48 (7th Cir. 2005). Pride does not present evidence that the written reprimand dated April 26, 2011 resulted in any tangible job consequences, and we therefore need not consider it as a form of retaliation.

Pride's internal complaint against States is dated April 27, 2011. (Mem., Ex. D, Attach. 19.) Pride does not specify when States learned of the internal complaint, but IDHS does not deny that States became knowledgeable at some point. At this stage, we will assume that States became aware of the internal complaint against him on April 27, 2011. Pride received a three-day suspension on June 22, 2011. (Pl.'s 56.1 RSOF ¶ 14(b).) It is not disputed that this three-day suspension constitutes an adverse employment action. (Mem. at 10.) Because Pride attempts to establish causation through timing alone, we are therefore left to consider whether an eight-week gap between Pride's April internal complaint and the June three-day suspension is sufficient to establish causation.[3] We find that it is not.

---

[3] From the language in her brief, we interpret Pride to be arguing that any alleged retaliation occurred as a result of her April internal complaint—and not her October EEOC charge. (Resp.

Neither Pride, nor IDHS, cite to any authority that supports their respective positions on whether an eight-week time lapse between protected activity and an adverse employment action establishes causation on its own. The Seventh Circuit has held that a two-month period between protected activity and an adverse employment action is insufficient to establish causation. *Milligan v. Bd. of Trs. of S. Ill. Univ.*, 686 F.3d 378, 390 (7th Cir. 2012); *see also Argyropolous*, 539 F. 3d at 734 (holding a seven-week interval, standing alone, does not create a material issue regarding causation).

Furthermore, the Seventh Circuit has noted that "'we typically [do not] draw strong conclusions from the mere fact that protected speech may have preceded an adverse employment action.' This is especially true in a case where the employee has a documented history of abusive and inappropriate behavior at work." *Cygan v. Wisconsin Dep't of Corrs.*, 388 F.3d 1092, 1102 (7th Cir. 2004) (quoting *Wright v. Illinois Dep't of Children & Family Servs.,* 40 F.3d 1492, 1500 (7th Cir. 1994) (alteration in original). While Pride finds it significant that she was not suspended prior to States acting as her supervisor, she did have a disciplinary history with previous supervisors. (Resp. at 12; Pl.'s 56.1 RSOF ¶ 14.)

---

at 12) ("Prior to having Mr. States as her supervisor, the Plaintiff had not received anything other than reprimands and coach and counseling since 2002. However, in just four short months after filing an internal complaint the plaintiff received four separate disciplines from Mr. States, including three suspensions. Plaintiff has clearly met the requirements necessary to establish retaliation based on her internal complaint regarding her supervisor's behavior, her multiple disciplines, including three suspensions after the internal complaint, and the causal connection between the complaint in April 2011 and the disciplines which occurred between April 2011 and October 2011.")

Even if Pride were to argue that the ten-day suspension issued to her on October 28, 2011 was issued in retaliation for her October 7, 2011 EEOC complaint about Mr. States' alleged conduct, we find no evidence in the record that shows that States was aware of the EEOC charge on October 28, 2011. (Resp. at 11-12) (noting that States was aware of the April internal complaint, but making no mention of whether or not States was ever aware of her October EEOC charge). Because Pride argues that the alleged retaliation occurred as a result of her April internal complaint and presents no evidence that States was aware of the EEOC charge, we need not consider whether the three-week gap between Pride's EEOC charge and the October suspension constitutes retaliation.

States' predecessor warned Pride about her behavior several times. On February 22, 2008, Jo Ann Thompson (State's predecessor and Pride's supervisor at the time) instructed Pride to discontinue making denigrating remarks about Thompson. (Pl.'s 56.1 RSOF ¶ 14(i).) On March 3, 2009, Thompson counseled Pride for engaging in inappropriate conduct. (Pl.'s 56.1 RSOF ¶ 14(h)(g).) On June 17, 2010, Thompson issued Pride an oral reprimand for engaging in conduct unbecoming a state employee. (Pl.'s 56.1 RSOF ¶ 14(f).) On June 29, 2010, Thompson sent Pride an email admonishing Pride for inappropriate conduct. (Pl.'s 56.1 RSOF ¶ 14(e).) Taken as a whole, these events, to which Pride admits, show that Pride faced disciplinary issues before States became her supervisor and before she engaged in any protected activity.[4] Given Pride's disciplinary history and the fact that she attempts to prove causation solely through timing, we hold that an eight-week interval between protected activity and an adverse employment action, under the present circumstances, is insufficient to establish causation. *See Liu v. Cnty. of Cook*, 10 C 6544, 2014 WL 840967, at *14 (N.D. Ill. Mar. 3, 2014) (holding that a ten-day lapse between protected activity and adverse employment action is "not enough to survive a motion for summary judgment" when there are reasonable explanations for the timing of the events); *Lance v. Betty Shabazz Int'l Charter Sch.*, 12 C 4116, 2014 WL 340092, at *9 (N.D. Ill. Jan. 29, 2014) ("Given the quantity and severity of the alternative reasons for [plaintiff's] termination, the Court concludes that [plaintiff] has not alleged facts sufficient to

---

4 In addition to the listed disciplines, Pride has also admitted that "Thompson had a number of issues with [Pride's] inappropriate behavior during her tenure as [Pride's] supervisor, and on multiple occasions Ms. Thompson warned [Pride] that if [Pride] continued to use insults, disparaging comments, or other unprofessional conduct, [Pride] would face disciplinary action." (Pl.'s 56.1 RSOF ¶ 17.) Pride further admitted that two of her subordinates filed internal complaints of harassment against her. (Pl.'s 56.1 RSOF ¶ 41.) These complaints alleged, among other things, that Pride attempted to intimidate other employees and that Pride disrespected and belittled an employee in front of other staff. (Pl.'s 56.1 RSOF ¶¶ 42, 48.) IDHS's Bureau of Civil Affairs investigated the complaints and determined that the allegations in both complaints were substantiated. (Pl.'s 56.1 RSOF ¶¶ 47, 51.)

support a claim that the filing of his December 6, 2011 complaint . . . was a but-for cause of the [March 6, 2011] decision to fire him.") Because Pride has failed to establish that but for her engagement in protected activity she would not have suffered the suspensions, we grant IDHS's motion for summary judgment as to Pride's retaliation claim.

**CONCLUSION**

For the foregoing reasons, we grant Defendant's Motion for Summary Judgment as to all of Plaintiff's claims. It is so ordered.

Marvin E. Aspen
United States District Judge

Dated: Chicago, Illinois
May 28, 2014